NO. 07-04-0481-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

APRIL 24, 2006

_____

LAMAR SANDERS, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-401,108; HON. BRAD UNDERWOOD, PRESIDING

_____

Before QUINN, C.J., REAVIS, J., and BOYD, S.J.[1]

Appellant Lamar Sanders appeals his conviction of deadly conduct in three issues. In doing so, he contends, 1) the trial court erred in overruling his *Batson* motion, 2) the trial court abused its discretion in admitting hearsay testimony, and 3) the evidence is factually insufficient to sustain the conviction. We affirm the judgment of the trial court.

**Background**

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon 2005).

On the evening of August 13, 2002, a dispute arose between the household at 2917 E. Auburn and the household at 2923 E. Auburn in Lubbock. Those located at the 2917 address included Ramona Sterling, her sister Loretta Wilson, her brother Anthony Sterling, Anthony's friend Jeremy Johnson, and Anthony's girlfriend Trelina Taylor. The persons at the 2923 address included appellant's girlfriend Glenda Mitchell, appellant, Glenda's nephew Kip Roddy, Quincy Bell, and two other young men. Earlier in the evening, Jeremy had accosted the sister of Quincy on the street and threatened to kill her. Later, Anthony went down to the 2923 address, leaned on the fence, and began talking to appellant and the other men at the house. They began to argue about the incident with Quincy's sister. Ramona, Loretta, and Trelina eventually went to the 2923 address to convince Anthony to come home. At some point, shots were fired, and Ramona received a bullet in the back of her lower leg.

### Batson Challenge

Appellant argues in his first issue that his constitutional rights were violated as well as article 35.261(a) of the Code of Criminal Procedure when the trial court denied his *Batson* challenge. We overrule the issue.

A litigant may not exercise his peremptory challenges in an invidiously discriminatory manner. *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). The party asserting discrimination must establish a prima facie case of the same. *Ford v. State,* 1 S.W.3d 691, 693 (Tex. Crim. App. 1999). Should the movant fulfill that duty, the party who exercised the strikes must explain why he did so and the reasons proffered must be facially neutral. *Id.* Unless discriminatory intent is inherent in the

explanation, the reason offered will be deemed race neutral. *Purkett v. Elem,* 514 U.S. 765, 768-69, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995); *Ford v. State,* 1 S.W.3d at 693-94. Once this step is satisfied, the movant must persuade the court to conclude that there was purposeful discrimination. *Ford v. State,* 1 S.W.3d at 693. Because the trial court's decision often turns on credibility, we give great deference to the trial court's decision and will not disturb it unless it is clearly erroneous. *Herron v. State,* 86 S.W.3d S.W.3d 621, 630 (Tex. Crim. App. 2002); *Mathis v. State,* 67 S.W.3d 918, 924 (Tex. Crim. App. 2002).

Appellant complains of the use of a peremptory strike on prospective juror Betty Payton Bryant who is African-American.[2] He argues that she gave no objectionable answers to any of the *voir dire* questions posed to her. The court conducted a hearing during which the prosecutor stated that he struck her because 1) she was hesitant to answer the question (and initially shook her head) as to whether she could consider the higher range of punishment although she eventually stated she could, 2) based on her body language, it appeared she did not like the female prosecutor questioning her, and 3) she had been a victim of domestic assault. The State is not required to offer good reasons, only race neutral ones. *Splawn v. State,* 160 S.W.3d 103, 115 (Tex. App.--Texarkana 2005, pet. ref'd). All of the proffered reasons arguably constitute race neutral reasons for striking the juror. *See Hutchinson v. State,* 42 S.W.3d 336, 340 (Tex. App.--Texarkana 2001), *aff'd,* 86 S.W.3d 636 (Tex. Crim. App. 2002) (a problem in assessing punishment is a race neutral reason); *Francis v. State,* 909 S.W.2d 158, 164 (Tex. App.--

---

[2]Two other African-Americans were seated on the jury.

Houston [14th Dist.] 1995, no pet.) (perceived hostility towards the prosecutor can be a race neutral reason); *Catley v. State,* 763 S.W.2d 465, 467 (Tex. App.--Houston [14th Dist.] 1988, pet. ref'd) (the fact the juror has been the victim of a crime is race neutral).

Moreover, the burden of persuasion remains with the defendant. *Jasper v. State,* 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). When the State offers race neutral reasons and the defendant fails to rebut them, as here, we cannot find the trial court's decision to be clearly erroneous. *Simpson v. State,* 119 S.W.3d 262, 268 (Tex. Crim. App. 2003), *cert. denied,* 542 U.S. 905, 124 S.Ct. 2837, 159 L.Ed.2d 270 (2004); *Stewart v. State,* 176 S.W.3d 856, 859 (Tex. App.--Houston [1st Dist.] 2005, no pet.). Accordingly, the trial court did not abuse its discretion.

### Hearsay Testimony

By way of his second issue, appellant contends that the trial court abused its discretion in admitting hearsay testimony of a police officer that she was told appellant had a gun at the time of the incident. We overrule the issue.

The prosecutor questioned Officer Yolanda Pena as to the source of the information she received that appellant had a gun in his possession on the evening when the incident occurred. She responded, "I had Loretta Wilson, Ramona Sterling and Quincy Bell." Prior to the completion of the question, appellant objected on the basis of hearsay. The court instructed the State to complete the question after which the court overruled the objection. We review the trial court's ruling on the admission of evidence for abuse of discretion. *Green v. State,* 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).

Appellant specifically complains of the reference to Quincy Bell having told the officer that appellant had a gun that night. This is so because Quincy did not testify at trial and was aligned with the people at the 2923 address thereby tending to credibly corroborate the testimony of Ramona and Trelina that appellant had a gun. Moreover, appellant points out that the State referred to the statement of Quincy in its closing argument and the jury made reference to it in a jury note.

The State did not proffer a hearsay exception at trial and the trial court did not state the basis for its ruling. Nevertheless, we must uphold the court's evidentiary ruling if it is reasonably supported by the record and is correct under any theory applicable to the case. *Oveal v. State,* 164 S.W.3d 735, 742 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd); *Williams v. State,* 161 S.W.3d 680, 683 (Tex. App.--Beaumont 2005, no pet.). Statements that are offered for the purpose of explaining how a defendant became a suspect and not for the truth of the matter asserted are not hearsay. *Dinkins v. State,* 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); *Davis v. State,* 169 S.W.3d 673, 675 (Tex. App.--Fort Worth 2005, no pet.). Officer Pena was one of the officers responding to the 911 call about the shooting, and she testified with respect to her attempts to investigate the incident. When she responded to the State's question as to "the source of information that Lamar Sanders had a gun on that evening," the court could have determined that she was merely stating how appellant became the primary suspect. While it is true that the State referred to the statement of Quincy in its closing argument as though it was evidence of the truth as to whether appellant had a gun, appellant did not object or request that the jury be instructed

5

that it should only consider the matter as evidence of how appellant became a suspect. We therefore find no abuse of discretion by the trial court.

## Sufficiency of the Evidence

Finally, appellant challenges the factual sufficiency of the evidence to sustain his conviction. The standard of review for factual sufficiency of the evidence requires that we review all of the evidence neutrally and determine whether it is so weak as to undermine confidence in the jury's determination or the adverse finding is against the great weight and preponderance of the evidence. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Under that standard, the factfinder may reasonably infer facts from the evidence before it, credit the witnesses it cares to, disbelieve any or all of the testimony proffered, and weigh the evidence in the manner it chooses. *Depauw v. State,* 658 S.W.2d 628, 633-34 (Tex. App.--Amarillo 1983, pet. ref'd).

Appellant points out that although Ramona testified that she saw him with a gun and that he fired it, she also stated that it was pointed at the ground, his arm was down, she did not know who shot her, and Kip Roddy got a gun out first. Additionally, appellant emphasizes that Trelina only assumed that appellant shot Ramona because she saw him pull out a gun and that there was testimony that Jeremy was at the scene firing a weapon.

However, Ramona also testified that as she was turning to leave, she saw sparks fly from appellant's gun, heard a gunshot, and felt a sensation like glass cutting her leg. She stated that appellant shot first and that she knew it was appellant who shot her due to the direction the shot came from. Although she averred that both Jeremy and Kip had

6

guns that evening, she never identified anyone but appellant as her attacker. Furthermore, Trelina testified that appellant pointed the gun towards the group of people where Ramona was standing and empty shell casings were found near where appellant was standing. The conflicting evidence as to whether Jeremy stayed at the 2917 address or was at the 2923 address at the time of the shooting and whether appellant actually had a gun was for the jury to resolve as was the credibility of Ramona. A jury could reasonably infer from the evidence that appellant discharged a firearm at or in the direction of Ramona and such a finding does not undermine our confidence in the outcome of the proceeding.

We therefore must and do affirm the judgment of the trial court.


John T. Boyd
Senior Justice

Do not publish.