**Robert Walter FISCHER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–05–00834–CR.**

Court of Appeals of Texas,
San Antonio.

Oct. 24, 2007.

Franklyn Mick Mickelsen, Broden & Mickelsen, Dallas, for appellant.

Scott Roberts, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice, STEVEN C. HILBIG, Justice.

## DISSENTING OPINION TO DENIAL OF EN BANC CONSIDERATION

STEVEN C. HILBIG, Justice.

The panel reverses Robert Fischer's murder conviction because it concludes the trial court abused its discretion in admitting testimony and the error affected Fischer's substantial rights. I believe the panel errs in considering the challenged evidence as "extraneous offense" evidence and improperly analyzes harm. I therefore requested en banc consideration of this appeal. A majority of the court has voted to deny en banc consideration. I dissent from that decision.

### Background

A jury found Fischer guilty of murdering his aunt and assessed a ninety-nine year sentence. On appeal Fischer complained the trial court abused its discretion by admitting evidence of an "extraneous offense"—that Fischer stole the probable murder weapon from his employer—because the State failed to produce sufficient evidence in its proffer to allow the trial judge to conclude that a reasonable jury could find beyond a reasonable doubt Fischer committed the theft.[1] *See Fischer v. State,* 235 S.W.3d 470 (Tex.App.-San Antonio 2007). Notably, Fischer does not argue on appeal that there was insufficient evidence for the jury to actually find beyond a reasonable doubt he stole the rifle.[2]

[1]. The trial judge performs a "gate-keeping" function when an extraneous offense is offered into evidence under Rule 404(b) in a criminal case. Relevant to our discussion, before the trial judge may admit the evidence, the proponent must demonstrate, whether by proffer or through evidence in a hearing outside the presence of the jury, that there is sufficient evidence to prove the extraneous offense beyond a reasonable doubt. *Harrell v. State,* 884 S.W.2d 154, 160–61 (Tex.Crim.App. 1994). If properly requested, the defendant is also entitled to a jury instruction that it may only consider the evidence for the limited purpose for which it was admitted and then only if it finds beyond a reasonable doubt defendant committed the act. *See Delgado v. State,* 235 S.W.3d 244, 250–52 (Tex.Crim.App. 2007).

[2]. The evidence proffered by the State and later admitted at trial included the facts that the probable murder weapon was a .22 caliber Cricket rifle, Fischer worked as a manager at the Wal–Mart in Boerne that had in its inventory a Cricket rifle, the Cricket rifle "went missing" around the time of the murder, Fischer was among nine to fourteen peo-

The panel holds the State's proffer was insufficient and "evidence of the extraneous offense" should have been excluded. *Id.* at 475–76. It concludes the trial court's decision to admit the evidence was outside the zone of reasonable disagreement and Fischer was harmed by its admission. *Id.* at 476.

### The trial court did not err in admitting the evidence because it was not "extraneous offense" evidence.

**Rule 404(b) Other Crimes, Wrongs or Acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence **other than that arising in the same transaction.**

TEX.R. EVID. 404(b) (emphasis added). By its terms, Rule 404(b) does not apply to evidence that arises in the "same transaction" as the charged offense. Accordingly, the court of criminal appeals has held the rule does not apply to "same transaction contextual evidence;" that is, evidence that "imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven." *Camacho v. State,* 864 S.W.2d 524, 532 (Tex.Crim.App.1993), *cert.*

*denied,* 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994). Such evidence "is admissible, not for the purpose of showing character conformity, but to illuminate the nature of the crime charged." *Id.* "Circumstances of the offense which tend to prove the allegations of the indictment are not extraneous offenses." *Id.*

Crimes, wrongs, or acts that are not "extraneous" to the offense charged are not subject to Rule 404(b). *See id.* at 534. The State is not required to give notice of its intent to introduce such evidence and the defendant is not entitled to a limiting or "reasonable doubt" instruction about such acts. *See id.* at 534–35 (instruction); *Williams v. State,* 161 S.W.3d 680, 684 (Tex.App.-Beaumont 2005, no pet.) (notice). Because notice and jury instructions are not required for this type evidence, it is also logical to conclude that no proffer or preliminary finding by the trial court is required. *See Delgado,* 235 S.W.3d at 250–52 (stating that when evidence is introduced as "same transaction contextual evidence," "Rule 404(b) is not implicated").

In *Camacho,* the defendant was charged with capital murder—the murder of David Wilburn while in the course of committing burglary of a habitation owned by Sam Wright. The State presented evidence that after the shooting, Camacho kidnapped Wright's wife and son and murdered them four days later in Oklahoma. *Camacho,* 864 S.W.2d at 532. On appeal, Camacho argued admission of the evidence of the murders in Oklahoma violated Rule 404(b) because the murders were remote to the charged offense both as to place and

---

ple with a key to the gun bunker where the rifle was stored, and Fischer made a comment demonstrating that he was aware of the Cricket rifle. Other evidence admitted at trial that linked Fischer to the murder includes the following: Fischer had visited his aunt several times in her home; while property was taken during the murder, the house was not

ransacked generally but only certain drawers where the aunt had kept valuables were opened, perhaps indicating the assailant was familiar with the aunt's habits and routine; and testimony that the assailant placed a cloth over the aunt's face, perhaps indicating there was a relationship between the assailant and the victim.

time. However, the court of criminal appeals held the evidence of the murders in Oklahoma was "same transaction contextual evidence" because it helped establish an element of the charged offense—Camacho's intent during the burglary. *Id.* at 532. The court concluded the evidence was not within Rule 404(b), was admissible, and no reasonable doubt jury instruction was required. *Id.* at 532–35; *see also Santellan v. State,* 939 S.W.2d 155, 168 (Tex.Crim.App.1997) (evidence that person charged with capital murder committed offense of "abuse of corpse" two days after killing held to be "blended or interwoven" with the charged offense, "relevant to the State's proof of the elements of the crime charged," and therefore "part of the same transaction as the capital murder").

In this case, the evidence the panel holds should have been excluded is similar "same transaction contextual evidence." The evidence describing the probable murder weapon, showing Fischer's knowledge of and access to that kind of weapon at Wal–Mart, and showing that such a weapon "went missing" from Wal–Mart around the time of the murder all tend to prove the allegations in the indictment. The evidence was not "extraneous" and was not properly the subject of an objection under Rule 404(b). Fischer concedes on appeal that the evidence was relevant and more probative than prejudicial. *See* TEX.R. EVID. 402, 403. The evidence was therefore admissible. The trial court's judgment should be affirmed because this court must uphold a trial court's ruling admitting evidence "if the ruling is reasonably supported by the record on any theory of law applicable to the case." *Laney v. State,* 117 S.W.3d 854, 857 (Tex.Crim.App. 2003).[3]

### *The majority opinion applies an inappropriate harm analysis.*

Assuming the panel majority correctly held admission of the "extraneous offense" evidence was error, it nevertheless reaches the wrong result because it applies an inappropriate harm analysis. As the majority recognizes, improper admission of extraneous offense evidence is not constitutional error, and this court must disregard the error unless it affected Fischer's substantial rights. *See Fischer,* at 475; TEX.R.APP. P. 44.2(b). The majority applies the Rule 44.2(b) standard by considering the usual factors applied when reviewing the harmful effect of evidence that is substantively inadmissible. *Id.* at 475–76; *see Motilla v. State,* 78 S.W.3d 352 (Tex.Crim.App.2002);[4] *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). However, Fischer in essence agrees the evidence was substantively admissible. That is, he concedes the evidence was relevant to a material issue in the case; that it was more probative than prejudicial; and does not contend the evidence as a whole was insufficient to prove the "extraneous offense" beyond a reasonable doubt. Rather, Fischer's complaint was a techni-

---

3. We must do so even if the theory was not presented in the trial court, *Hailey v. State,* 87 S.W.3d 118, 121–22 (Tex.Crim.App.2002), *cert. denied,* 538 U.S. 1060, 123 S.Ct. 2218, 155 L.Ed.2d 1111 (2003); even if the trial judge admitted the evidence for a different, and incorrect, reason, *Laney,* 117 S.W.3d at 857; and even if the State does not urge the correct theory of admissibility on appeal. *See Ex parte Taylor,* 36 S.W.3d 883, 886 (Tex. Crim.App.2001).

4. Under *Motilla,* harm is determined by reviewing the entire record and considering factors such as the nature of evidence supporting the verdict, character of the alleged error and its relationship to the other evidence in the case, jury instructions, prosecution and defense theories of the case, closing arguments, voir dire, and whether the State emphasized the error. 78 S.W.3d at 355–56.

cal one: the trial court failed in its gate-keeping function under Rules of Evidence 104(b) and 404(b) by improperly concluding the proffer presented sufficient evidence to prove the "extraneous offense" beyond a reasonable doubt.

There are at least three components of Rule 404(b) and each serves a different purpose. For extraneous offense evidence to be admissible under Rule 404(b), the State must (1) demonstrate its relevance to some issue other than "propensity," (2) demonstrate that a reasonable jury could find beyond a reasonable doubt that the defendant committed the offense, and (3) give notice of its intent to use such evidence when timely requested. When extraneous offense evidence has been improperly admitted, how we evaluate whether the error was harmless depends on which condition of admissibility was not met and the purpose of that condition. *See, e.g., Hernandez v. State,* 176 S.W.3d 821, 824 (Tex.Crim.App.2005).

In *Hernandez,* the court of criminal appeals considered the appropriate harm analysis when the State failed to provide the required notice of its intent to use an extraneous offense that was otherwise substantively admissible—that is, was relevant to an issue other than propensity and its probative value was not substantially outweighed by its prejudicial effect:

> We agree that the purpose of the Rule 404(b) notice provision of preventing surprise is a valid consideration in conducting a Rule 44.2(b) harm analysis. *See Ford v. State,* 73 S.W.3d 923, 926 (Tex.Crim.App.2002) (focusing on purpose of violated jury-shuffle statute in conducting Rule 44.2(b) harm analysis). However, we do not agree with appellant that this is inconsistent with *King* and the usual harm analysis applied to the improper admission of evidence.
>
> When an appellate court determines that a jury's verdict was substantially influenced by the improper admission of substantively inadmissible Rule 404(b) evidence, that influence on the jury's verdict will always be "injurious" since there was no proper purpose for the jury to consider the evidence. But, this is not the case when substantively admissible Rule 404(b) evidence is improperly admitted because of the State's failure to comply with the Rule 404(b) notice provision. Under these circumstances, the error in admitting this evidence may have had a substantial effect or influence on the jury's verdict, but it cannot be said that this effect or influence was "injurious" if the defendant was not surprised by the evidence. *See King* [*v. State*], 953 S.W.2d [266] at 271 [ (Tex.Crim.App.1997) ] (substantial right affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict").

*Id.* at 825. The court concluded that because the defendant did not demonstrate he was surprised by the evidence, his substantial rights were not affected, and affirmed the conviction. *Id.* at 825–26.

The "gate-keeping" function provided by the trial court's initial finding is designed to prevent a defendant from having to meet evidence that is otherwise admissible and relevant if the State cannot prove the extraneous act beyond a reasonable doubt. Fischer complains the trial court erred in performing this function because the State's proffer was insufficient to proves its relevance. However, just as in *Hernandez,* Fischer's substantial rights are affected only if at the end of the evidence there was insufficient evidence to allow a reasonable jury to find he committed the theft beyond a reasonable doubt. Because Fischer does not contend the evidence was insufficient for a jury to so conclude, I would hold, based on *Hernandez,* that Fischer's substantial rights were not affected and any error was harmless.

### *The panel opinion does not consider all the evidence in its harm analysis.*

Lastly, the majority panel opinion does not consider all of the evidence in its harm analysis. The opinion states, "The theft of the rifle is the only evidence linking Fischer to the murder weapon." *Fischer*, at 475. This statement completely ignores the evidence that:

- the probable murder weapon was a Cricket .22 caliber rifle;
- Fischer worked at a Wal–Mart that sold Cricket .22 caliber rifles;
- Fischer was an associate manager and had a key to the gun locker where the rifles were kept; and
- Fischer was seen opening the gun locker some time before the murder and mentioned that he knew Wal–Mart sold that type of rifle.

Assuming any evidence that Fischer stole the rifle was subject to Rule 404(b) and assuming the State's proffer was insufficient, the **only** evidence that should have been excluded is the evidence that the rifle at Wal–Mart "went missing" about the time of the murder. The evidence listed above, although part of the State's proffer on the theft, was independently relevant and admissible to identify the probable murder weapon and to show Fischer's knowledge of and access to that type of weapon. Such evidence standing alone in no way implicates Fischer in the **theft** of a rifle or other "bad act" and therefore would not be excluded even if evidence of the theft were properly excluded. Accordingly, the majority should have considered this evidence, which clearly links Fischer to the probable murder weapon, in its harm analysis. If it had, the majority likely would have concluded that Fischer's substantial rights were not affected.

### *Conclusion*

The trial court's judgment should be affirmed because the evidence was properly admitted before the jury. More importantly, there are few reported decisions discussing the appropriate harm analysis when a defendant challenges the sufficiency of the proffer of an extraneous offense. By its decision, the panel's opinion creates an incorrect framework for analyzing harm in future cases. Because the court as a whole should reconsider the appeal, but has voted not to do so, I dissent.

Panel Opinion by: REBECCA SIMMONS, Justice.

Panel Dissenting Opinion by: PHYLIS J. SPEEDLIN, Justice.

Opinion Dissenting to Denial of En Banc Consideration by STEVEN C. HILBIG, Justice, joined by KAREN ANGELINI, Justice and PHYLIS J. SPEEDLIN, Justice.